UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EURUS ENERGY HOLDINGS CORPORATION,<br>*Petitioner*,<br>v.<br>KINGDOM OF SPAIN,<br>*Respondent.* | Civil Action No. 25-1842 (RDM) |

**MEMORANDUM OPINION**

In June 2025, Eurus Energy Holdings Corporation ("Eurus") brought this case to enforce an arbitral award issued on November 14, 2022, by a tribunal of the International Centre for Settlement of Investment Disputes ("ICSID") against the Kingdom of Spain. Dkt. 1 at 1 (Pet.). Not long after it filed suit, however, Eurus assigned its interest in the arbitral award to Blasket Renewable Investments LLC ("Blasket"). Dkt. 28-1. Then, in December 2025, the Kingdom of Spain moved to dismiss Eurus's petition or to stay the case pending the resolution of related proceedings before the D.C. Circuit and the Supreme Court, Dkt. 16, and Eurus opposed that motion and requested that the Court "enter judgment on [its] award," Dkt. 23 at 11. Finally, in April 2026, Eurus and Blasket moved to substitute Blasket for Eurus as the petitioner in the case, *see* Dkt. 26, and the Kingdom of Spain opposed that motion, arguing that "no relevant interest ha[d] been or could be validly 'transferred' to Blasket," Dkt. 27 at 7. Both motions are now fully briefed and ripe for decision. In addition, the European Commission has filed an amicus brief in support of the Kingdom of Spain. *See* Dkt. 32-1.

For the reasons explained below, the Court will **GRANT** the motion to substitute Blasket for Eurus, will **DENY** the Kingdom of Spain's motion to dismiss or to stay the case, and will **ENTER** judgment on the award in Blasket's favor in the full amount specified in the award, Dkt. 1-1 at 6–63, and as further specified in the ICSID Tribunal's Decision on Rectification, Dkt. 1-1 at 281–306.

## I. BACKGROUND

### A. The ICSID Convention

The ICSID Convention, 17 U.S.T. 1270, 575 U.N.T.S. 159, "is a multilateral treaty aimed at promoting private international investment." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 514 (D.C. Cir. 2023). The Convention established an international institution—the International Centre for Settlement of Investment Disputes—and charged it with "maintaining a legal framework and a reliable process for the resolution of disputes between private investors and governments." *Id.* Among other things, the ICSID convenes tribunals for the mediation and arbitration of investment disputes between countries whose governments have signed and ratified the Convention—Contracting States—and nationals of other Contracting States. *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 23-cv-2701, 2024 WL 4298808, at *2 (D.D.C. Sept. 26, 2024); ICSID Convention art. 1(2). Under 22 U.S.C. § 1650a, any pecuniary obligation imposed by an ICSID "award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

Article 25 of the Convention provides that the ICSID's "jurisdiction . . . shall extend to any legal dispute arising directly out of an investment, between a Contracting State . . . and a national of another Contracting State, which the parties to the dispute consent in writing to submit." ICSID Convention art. 25(1). "When the parties have given their consent, no party

may withdraw its consent unilaterally." *Id.* The parties may, however, object to the arbitral tribunal's jurisdiction over or competence to decide the dispute. *Id.* art. 41(2). The tribunal "shall be the judge of its own competence." *Id.* art. 41(1); *see Blasket*, 2024 WL 4298808, at *2. The tribunal must issue its awards "in writing," and the award must "address every question submitted by the parties and . . . state the reasons upon which the arbitration decision and award are based." ICSID Convention art. 48(2)–(3).

"Of particular note here, Article 53 of the Convention provides that a party dissatisfied with an award may challenge it on various grounds, but may do so only through proceedings at the Centre and not collaterally in the courts of member states." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 101 (2d Cir. 2017); ICSID Convention art. 53(1). Accordingly, "[t]he only route for setting aside an ICSID Arbitral Tribunal's award is through the ICSID Convention's annulment process." *Valores*, 87 F.4th at 515; *see* ISCID Convention art. 52. The ICSID does not, however, have the authority to enforce arbitral awards. *Valores*, 87 F.4th at 515. To enforce an ICSID award, a party must rely on the courts of a Contracting State. *Id.* But the role of such courts is limited: they "may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro Negro*, 863 F.3d at 102. They are "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Id.*

**B. The Arbitration Proceedings**

In 1997, Respondent Kingdom of Spain ("Spain") adopted legislation creating financial incentives and other inducements for firms to "invest[] in renewable energies . . . within its territory." Dkt. 1 at 3 (Pet. ¶ 9). Over the next decade, Petitioner Eurus Energy Holdings Corporation relied on these financial incentives to invest in Spanish companies that owned and operated wind farms within Spain. Dkt. 1 at 2–3 (Pet. ¶¶ 1, 9). Between 2012 and 2014,

however, Spain adopted laws that rolled back and eventually revoked the economic incentives on which Eurus had relied. *Id.* at 3 (Pet. ¶ 9). Spain also "claw[ed] back subsidies paid" prior to the policy changes. *Id.* at 5 (Pet. ¶ 18).

Both Spain and Japan, where Eurus is incorporated, were parties to the Energy Charter Treaty ("ECT"), 2080 U.N.T.S. 95, during the events in question.[1] *Id.* at 1, 4 (Pet. ¶¶ 1, 12). The ECT "establishes a legal framework in order to promote long-term cooperation in the energy field." ECT art. 2; *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1094 (D.C. Cir. 2024). It requires contracting parties to "encourage and create stable, equitable, favourable and transparent conditions" for investment by investors located or incorporated in other contracting parties. ECT art. 10(1). Contracting parties agree to submit disputes arising under the ECT to international arbitration. *Id.* art. 26(3)(a). Parties to the ICSID Convention, including Spain and Japan, *see* Dkt. 1 at 2 (Pet. ¶ 4); Dkt. 1-2 at 28, further consent to submit disputes arising under the ECT to the ICSID. *Id.* art. 26(4)(a)(i).

Consistent with those procedures, Eurus filed a request for arbitration with the ICSID for arbitration under the ICSID Convention. Dkt. 1 at 4 (Pet. ¶ 15). The ICSID tribunal conducted a hearing on jurisdiction and the merits in July of 2018. Dkt. 16-6 at 1113. In brief, Eurus argued that "Spain's legislative and regulatory actions that retrenched on the incentives offered for Eurus's investments constituted a breach of Spain's obligations under the ECT." Dkt. 1 at 4 (Pet. ¶ 15). Spain responded that the tribunal lacked jurisdiction and that, in any event, it had not breached its obligations under the ECT. Dkt. 16-6 at 1144. On the jurisdictional issue, Spain

[1] Spain has since announced its intention to withdraw from the ECT. *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1094 (D.C. Cir. 2024) ("While these cases were pending, the EU, Spain, and Luxembourg each announced its intention to withdraw from the ECT.").

argued that the European Commission had decided that "any compensation granted by a tribunal to an investor" based on Spain's modification of its renewable energy regime would constitute "state aid" and that only the Commission could authorize such state aid. *Id.* at 1167. Spain further argued that a prior decision of the Court of Justice of the European Union ("CJEU") barred the tribunal from applying EU law. *Id.* at 1174.

On March 17, 2021, the tribunal issued a 143-page Decision on Jurisdiction and Liability ("Decision"). Dkt. 1 at 4 (Pet. ¶ 18). The Decision first resolved Spain's challenge to the tribunal's jurisdiction by finding that it had jurisdiction to resolve Eurus's claim, "except as to a narrow dispute regarding certain tax measures." *Id.* On the merits, the Decision concluded that Spain's efforts to claw back subsidies paid under the favorable regime "breached Article 10(1) of the ECT." Dkt. 16-6 at 1216. As a result, the tribunal issued an award of €106,200,000 (in addition to interest and various fees) to Eurus. Dkt. 1 at 5 (Pet. ¶ 19); Dkt. 1-1 at 60.

On September 12, 2023, Spain filed an application for annulment of the award and requested a stay of enforcement. Dkt. 1 at 6 (Pet. ¶ 21). In June 2024, the ICSID annulment committee terminated the stay of enforcement of the award, Dkt. 1-1 at 298, making it immediately binding and enforceable, *see* ISCID Convention art. 53(1). In July 2025, shortly after this suit was filed, the annulment committee denied Spain's application. Dkt. 23 at 16.

**C. Procedural History**

On June 11, 2025, Eurus filed a petition in this Court to enforce the arbitration award against Spain. *See* Dkt. 1. On December 5, 2025, Spain moved to dismiss or, in the alternative, stay the action pending resolution of related proceedings. *See* Dkt. 16. After that motion was fully briefed, *see* Dkts. 23, 25, Eurus and Blasket jointly moved to substitute Blasket as the petitioner under Federal Rule of Civil Procedure 25(c), *see* Dkt. 26. Both the motion to dismiss or to stay and the motion to substitute are fully briefed. *See* Dkts. 27, 28, 30, 32.

## II. LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court must take the allegations of fact contained in the petition as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alterations in original). Under Rule 12(b)(6), the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation modified).

Under Rule 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). Substitution is appropriate if it would "facilitate the conduct of the litigation." *Commissions Imp. Exp., S.A. v. Republic of Congo*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015) (quoting *Citibank v. Grupo Cupey, Inc.*, 382 F.3d 29, 32 (1st Cir. 2004)); 7C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1958 (3d ed. 2026).

## III. ANALYSIS

### A. Motion to Substitute

The Court starts with Eurus and Blasket's joint motion to substitute Blasket for Eurus pursuant to Federal Rule of Civil Procedure 25(c). Dkt. 26. On August 28, 2025, Eurus and Blasket executed a deed of assignment, transferring "all of the rights, interests and benefits of [Eurus] under or in respect of the Award" to Blasket. Dkt. 28-1 at 7, 10, 23. In light of that

deed, they argue, Blasket is now "the only party with a legal and practical interest in this Court's recognition of the Award." Dkt. 26 at 1–2. Spain opposes substitution on the grounds that Blasket lacks a valid interest in this case and that substitution would unduly complicate ongoing litigation. Because Eurus's assignment of the award to Blasket is valid and substitution would facilitate the conduct of this litigation, the Court will grant Eurus and Blasket's motion to substitute.

1. *Blasket has an interest in the ICSID award*

Spain contends that Blasket does not have an interest in this litigation sufficient to support substitution under Rule 25(c) because ICSID awards are not assignable. It relies on Article 54(2) of the Convention, which reads in relevant part: "A party seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court or other authority which such State shall have designated for this purpose a copy of the award certified by the Secretary-General." ICSID Convention art. 54(2). According to Spain, this language grants "the right to seek enforcement of an award *only* to 'a party' to the arbitration." Dkt. 27 at 9 (emphasis added). In support of this reading of Article 54(2), Spain cites a 2025 decision of the U.K. High Court—issued by a single judge sitting as a court of first instance—which relied on Article 54(2) to conclude that the right to enforce an ICSID award is "not capable of assignment." *OperaFund Eco-Invest SICAV PLC, et al. v. Kingdom of Spain*, [2025] EWHC 2874 (Comm) Case No. CL-2021-000481, ¶¶ 44-45, 71 (Nov. 11, 2025); Dkt. 27 at 9. And because the deed assigning the award from Eurus to Blasket contains a choice-of-law provision specifying that it shall be "governed by" English law, Dkt. 28-1 at 17, Spain argues that this Court must follow *OperaFund*. Dkt. 30 at 1–3.

As a threshold matter, the Court disagrees that the deed's choice-of-law provision compels the Court to adopt *OperaFund*'s conclusion that the ICSID Convention disallows the

assignment of awards. Spain has repeatedly framed the question before this Court as whether the ICSID Convention itself authorizes the assignment of ICSID awards. *See* Dkt. 27 at 9–10; Dkt. 38 at 7. Indeed, the relevant portion of the *OperaFund* decision interpreted and applied the ICSID Convention, not English law. The *OperaFund* court concluded that ICSID awards are not assignable "as a matter of construction of the ICSID Convention," *OperaFund* ¶ 71, and then expressly declined to address the "alternate argument" that an ICSID Convention award is "incapable of assignment *under English law*," *id.* at ¶ 78 (emphasis added). By its own terms, then, *OperaFund*'s holding with respect to ICSID awards constitutes an interpretation of international law, not an application of English law. Spain does not offer any authority for the proposition that a choice-of-law clause like the one at issue here requires application of not only the chosen jurisdiction's domestic law, but also its interpretation of international law.

Accordingly, this Court must independently examine the ICSID Convention to determine whether it "grants the right to seek enforcement of an award only to 'a party' to the arbitration." Dkt. 27 at 9 (citing *OperaFund* ¶¶ 51, 53, 71). When interpreting a treaty, the Court is "guided by principles similar to those governing statutory interpretation." *Iceland S.S. Co.-Eimskip v. U.S. Dep't of Army*, 201 F.3d 451, 458 (D.C. Cir. 2000). Those principles require the Court to begin with the treaty's text. *See Medellin v. Texas*, 552 U.S. 491, 506 (2008). Spain relies on Article 54(2), which reads in relevant part: "A party seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court or other authority which such State shall have designated for this purpose a copy of the award certified by the Secretary-General." ICSID Convention art. 54(2). Reasoning that "party" in Article 54(2) could refer only to a party to the underlying arbitration, Spain construes Article 54(2) to grant the right to seek recognition or enforcement of an ICSID award only to such a party. Dkt. 27 at 9–10.

The principal problem with this argument is that Article 54(2) does not speak to which individuals and entities have a right to enforce ICSID awards at all. It merely directs "[a] party seeking recognition or enforcement" to "furnish . . . a copy of the award certified by the Secretary-General" to a "competent court." ICSID Convention art. 54(2). As the only other federal court to have considered this question observed, this language "appears to do no more than describe the procedure that must be used by a party seeking recognition or enforcement of an award." *Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 380 (S.D.N.Y. 2012). Setting forth the procedural requirement that those seeking enforcement of an ICSID award present a certified copy of the award does not define or limit the category of entities who may initiate an enforcement proceeding. Simply put, Article 54(2) says nothing about assignability and says nothing about whether the word "party" refers to a "party" to the arbitration, a "party" to the enforcement proceeding, or—as the term is often used—simply "one," "a person or group," or "an individual, firm, or corporation." *See Party*, Webster's Third New International Dictionary at 1648 (1993).[2] Suggesting that the ICSID Convention barred assignability in this obtuse and imprecise manner stretches (and, indeed, snaps) credulity.

Nor do any other textual clues suggest that the ICSID Convention uses "party" exclusively to refer to the parties to the arbitration. As Judge Gardephe explained in *Blue Ridge*, the ICSID Convention does not define the word "party," and context reveals that different provisions of the Convention use the term in different ways. *See* 902 F. Supp. 2d at 376–81. Article 64, for example, uses "party" to refer to Contracting States, while Article 67 uses "party"

---

[2] Notably, even if the Court were convinced that the word "party" refers to a "party to the arbitration," that would pose no problem here, since Eurus, in fact, did all that Article 54(2) requires: it "furnish[ed] to [the] court . . . a copy of the award certified by the Secretary-General." ICSID Convention art. 54(2); *see* Dkt. 1-1 at 5.

to refer to parties to the Statute of the International Court of Justice. Even more to the point, numerous provisions use the phrases "a party to the dispute" or "parties to the dispute," *Blue Ridge*, 902 F. Supp. 2d at 378–79, and the modifying language "to the dispute" would be surplusage if, as Spain argues, "'party' was intended always to mean a 'party to the arbitration,'" *id.* at 380.[3] In light of the Convention's varied, context-dependent uses of "party" and inclusion of the limiting phrase "to the dispute" in other provisions, the word "party" in Article 54(2) cannot bear the weight placed upon it by Spain. It is expansive enough to include those who did not participate in the arbitration proceeding but "seek[] recognition or enforcement" of a validly assigned ICSID award.

Moreover, neither Article 54(2) nor any other provision of the Convention expressly limits who may initiate an enforcement proceeding. In the face of this silence, the most reasonable conclusion is that the Convention defers to the domestic law of Contracting States as to who may enforce an ICSID award. That conclusion flows from the structure of the Convention, which leaves the Centre without any authority to enforce ICSID awards and leaves the details of enforcement and execution up to Contracting States. It is also consistent with Article 54(1), which requires Contracting States to "enforce" an ICSID award "as if it were a final judgment of a court in that State," ICSID Convention art. 54(1), and Article 54(3), which provides that "[e]xecution of the award shall be governed by the laws concerning execution of

[3] Spain also relies on cases holding that "U.S. courts will not infer private rights in treaties absent *clear* textual support" to support its narrow reading of Article 54(2). Dkt. 27 at 10. But that line of cases is inapposite where, as here, a treaty "explicitly call[s] upon the courts for enforcement." *McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485, 489 (D.C. Cir. 2008). Article 54(1) requires Contracting States to enforce ICSID awards, and 22 U.S.C. § 1650a, in turn, provides that "[a]n award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States" and "shall be enforced." Together, the Convention and 22 U.S.C. §1650a explicitly create a judicially enforceable right to petition for enforcement.

judgments in force in the State in whose territories such execution is sought," ICSID Convention art. 54(3). It follows that if a Contracting State would allow an assignee to enforce a domestic judgment, it should also allow an assignee to enforce an ICSID award under the same circumstances. Otherwise, it would fail to "treat the [ICSID] award as if it were a final judgment" of a domestic court, ICSID Convention art. 54(1), that must be executed in accordance with the law of the State in which execution is sought, ICSID Convention art. 54(3). Where parity between ICSID awards and domestic judgments is the general rule, it would be "more than a little strange for Article 54(2) . . . to carve out an assignability-specific exception" to that rule without express language to that effect. Dkt. 28 at 9.

Having concluded that ICSID awards may be assigned to the same extent as domestic final judgments, only one question remains—which body of law should determine whether an ICSID award is assignable? It is possible that the assignability of ICSID awards should be governed by federal common law rather than the law of the forum state, since proceedings to enforce an ICSID award arise under federal and international law. Neither party, however, has raised the applicability of federal common law, and, in any event, the Court concludes that a federal common law analysis would make no difference. A "precondition for applying federal law is a 'significant conflict between some federal . . . interest and the use of state law.'" *United States v. Honeywell Int'l Inc.*, 47 F.4th 805, 815 (D.C. Cir. 2022) (quoting *Atherton v. FDIC*, 519 U.S. 213, 218 (1997)). Any such conflict "must be specifically shown" before creating and applying a federal rule of decision. *Id.* (quoting *Atherton*, 519 U.S. at 218). Spain has not identified any conflict between the use of state law and the important federal policies embodied in 22 U.S.C. § 1650a. To the extent that borrowing state law defeats uniformity of implementation, Congress has "already made the contrary policy judgment" by directing "that

award enforcement follow the varied paths allowed under the money-judgment enforcement schemes of more than 50 jurisdictions." *Titan Consortium 1, LLC v. Argentine Republic*, 182 F.4th 1038, 1049 (D.C. Cir. 2026) (borrowing D.C. law to determine 22 U.S.C. § 1650a's statute of limitations). Because Congress chose to treat ICSID awards like "a final judgment of a court of general jurisdiction of one of the several States," 22 U.S.C. § 1650a, borrowing state law on the assignability of final judgments is appropriate in this case.

Eurus and Blasket rely on the law of this forum, Washington, D.C., which permits the assignment of final judgments—both those issued by the Superior Court and those issued by courts of sister states. *See* D.C. Code §§ 28-2301, 15-352; *cf. Blue Ridge*, 902 F. Supp. 2d at 381 (applying the law of the forum state to determine whether ICSID award could be assigned). Spain does not dispute that D.C. law permits the assignment of final judgments. *Compare* Dkt. 28 at 5 ("Spain does not and cannot dispute that D.C. law permits an assignee to enforce a final judgment of another state."), *with* Dkt. 30 (failing to dispute that D.C. law permits assignment). Spain instead argues that the Court should apply English law, but it cites only *OperaFund*'s interpretation of the ICSID Convention, not English law. *See OperaFund* ¶ 71 (holding ICSID award not assignable "as a matter of construction of the ICSID Convention"); *id*. at ¶ 78 (declining to decide whether an ICSID award is capable of assignment "under English law"). Judgments are generally assignable under English law, and Spain offers no authority to the contrary. *See* Law of Property Act 1925, 15 & 16 Geo. 5 c. 20, § 136(1) (authorizing "assignment by writing under the hand of the assignor . . . of any debt or other legal thing in action"); *OperaFund* ¶ 76 (noting that, in general, "the benefit of a High Court judgment is capable of being assigned"). Because final judgments are assignable under both D.C. law and

English law, the Court need not decide which body of law governs the validity of the deed under choice-of-law principles. Under either, the deed of assignment is valid.

Spain's scattershot of other arguments challenging Eurus's assignment of the ICSID award are not persuasive, and the Court will not address them further. Because Eurus validly assigned its ICSID award to Blasket, Blasket has an interest in this litigation sufficient to support substitution pursuant to Rule 25(c).

2. *Substitution would facilitate this litigation*

The Court also concludes that substitution would facilitate this litigation. First, the Court must reject Spain's suggestion that the substitution of Blasket would defeat the Court's subject-matter jurisdiction. *See* Dkt. 27 at 11–12. Spain contends that 22 U.S.C. §1650a "confers jurisdiction only to the extent the action to enforce an ICSID award is brought by a party with a treaty right to enforce it, and so substituting Blasket would defeat subject matter jurisdiction." *Id.* In support of that conclusion, it quotes a portion of the first sentence of § 1650a(a) referring to "a right arising under a treaty of the United States" and argues that this language requires the Court to "look to the ICSID Convention itself to determine whether an assignee has an enforceable right under that treaty." *Id.* at 11. The relevant sentence of § 1650a(a), however, provides that "[a]n award of an arbitral tribunal rendered pursuant to chapter IV of the convention *shall create a right arising under a treaty of the United States*." 22 U.S.C. § 1650a(a) (emphasis added). As the Court has already explained, Blasket was validly assigned Eurus's ICSID award and therefore has "a right arising under a treaty of the United States" sufficient to invoke this Court's subject-matter jurisdiction.

Because Blasket is entitled to any recovery obtained from these enforcement proceedings, it is the real party in interest and has every incentive to litigate vigorously. *See, e.g.*, *Beach TV Props., Inc. v. Solomon*, No. CV 15-1823, 2016 WL 6068806, at *15 (D.D.C. Oct. 14, 2016)

(assignee is real party in interest); *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 52 (D.D.C. 2003) (same). On the other hand, Eurus's assignment of the ICSID award to Blasket has all but eliminated its interest in this litigation such that it might, at least arguably, lack Article III standing to maintain this action. *See Beach TV Props.*, 2016 WL 6068806, at *15. Furthermore, if the Court were to deny substitution, Eurus would still be contractually obligated to provide Blasket with any money that it recovers from these proceedings. *See* Dkt. 28-1 at 7, 10. Although Spain raises the specter that European Union authorities might eventually compel Spain to claw back any recovery obtained by Blasket from Eurus, Dkt. 30 at 5, any such clawback proceedings would occur long after the termination of this suit and in the same posture, regardless of whether the Blasket or Eurus prosecutes this action. It follows that, in all likelihood, any clawback proceedings would be complicated, if at all, by Eurus's assignment of its ICSID award to Blasket and not by the substitution of Blasket in this action.

For all of these reasons, the Court will grant Eurus and Blasket's motion to substitute, and will substitute Blasket for Eurus as petitioner in this action.

**B. Motion to Dismiss**

Turning to the merits, Spain seeks to dismiss the petition and to prevent enforcement of the ICSID award on several grounds. It first argues that the award is not entitled to full faith and credit under 28 U.S.C. § 1650a because the tribunal "substantially infringed the authority" of the European Commission over "state aid." Dkt. 16-1 at 23–24. It then argues that international comity and the related foreign sovereign compulsion doctrine weigh in favor of dismissing the petition. *Id.* at 25. Spain further contends that the act of state doctrine also counsels against enforcing the award. *Id.* at 30. Finally, "[i]f the Court is not inclined to dismiss the Petition at this time," Spain requests a stay of this action "pending the outcome of ongoing proceedings

before the D.C. Circuit and the Supreme Court." *Id.* at 34.[4] In opposition, Blasket—which is not the Petitioner—argues that the ICSID award is entitled to full faith and credit, that none of the doctrines cited by Spain apply here, and that a stay of the proceedings is unwarranted. Blasket has the better of the arguments. Under D.C. Circuit precedent, the award is enforceable, and a stay of the proceedings would not promote judicial efficiency.

1. *Full Faith and Credit*

Article 54 of the Convention authorizes Contracting States with federal constitutions, such as the United States, to "enforce [an ISCID] award in or through its federal courts." ICSID Convention art. 54(1). It further permits those courts to "treat the award as if it were a final judgment of the courts of a constituent state." *Id.* Congress gave effect to Article 54 by enacting § 1650a(a), which provides that ICSID arbitral awards "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

The Court's role in enforcing the final judgment of another court is strictly limited. "Preventing relitigation of issues already decided is the keystone of the full faith and credit obligation." *Valores*, 87 F.4th at 519. A court "may not deny a judgment full faith and credit because 'it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits.'" *Id.* (quoting *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (per curiam)). Rather, "[a] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the

[4] Spain also argues that this case should be dismissed for *forum non conveniens.* Dkt. 16-1 at 31. As Spain acknowledges, however, that argument is squarely foreclosed by D.C. Circuit precedent holding that "*forum non conveniens* is not available in proceedings to confirm a foreign arbitral award." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1105 (D.C. Cir. 2024); *LLC SPS Stileks v. Republic of Moldova*, 985 F.3d 871, 876 n.1 (D.C. Cir. 2021). Dismissal of the petition is therefore "not warranted under the doctrine of *forum non conveniens*." *Blasket*, 2024 WL 4298808, at *11.

second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Id.* at 520. Applying that standard to an ICSID award in *Valores*, the D.C. Circuit "looked to three facts to determine that the award was entitled to full faith and credit." *Blasket*, 2024 WL 4298808, at *7. The Court must consider (1) whether ICSID had jurisdiction over the matter, but must defer to ICSID's finding of jurisdiction if the question was "fully and fairly litigation and finally decided" in the arbitration; (2) whether the award is authentic; and (3) "whether ICSID would treat the award as binding." *Valores*, 87 F.4th at 520; *see, e.g.*, *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. CV 20-817 (JDB), 2025 WL 2336428, at *6 (D.D.C. Aug. 13, 2025) (enforcing award where all three of the *Valores* requirements were met); *Blasket*, 2024 WL 4298808, at *7, 14 (same). As the Valores court further explained, § 1650a "expressly forecloses collateral attack on ICSID awards in federal courts by excluding ICSID enforcement actions from the purview of the Federal Arbitration Act" ("FAA"), which "allows an enforcing court to vacate an arbitral award where the award was tainted by fraud, corruption, or misconduct by the arbitrator." 87 F.4th at 520. As a result, enforcement of an ICSID award does not implicate "even the 'extremely limited' review available under the FAA." *Id.* (citation omitted).

Spain does not challenge the award on any of the grounds recognized in *Valores*, and the Court's own review of the record confirms that the award satisfies the highly deferential *Valores* standard. The ICSID tribunal fully and fairly considered and rejected Spain's objections to its exercise of jurisdiction over Eurus's claim. Dkt. 1-1 at 109–110, 128–42. The record reveals no reason to doubt the authenticity of the award or whether the ICSID would treat it as binding. Awards are "binding on the parties" to an ICSID tribunal unless they are annulled, ISCID

Convention art. 53(1), and the ICSID annulment committee denied Spain's annulment application on July 31, 2025, Dkt. 23 at 16.

Nonetheless, Spain contends that this case presents one of those rare circumstances when the full faith and credit obligation yields to other considerations. Citing *Blinder, Robinson & Co., Inc. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988), Spain argues that "a state court judgment may be collaterally attacked when 'the first court's proceeding 'substantially infringed the authority of another tribunal or agency of government.'" Dkt. 16-1 at 23. Extending *Blinder*'s domestic full faith and credit analysis to § 1650a, Spain argues, "this Court is not only empowered but is required to consider whether the arbitral tribunal's exercise of jurisdiction infringed the exclusive authority of the European Commission and EU courts." Dkt. 25 at 12.

In *Blinder*, however, the D.C. Circuit merely recognized a narrow exception to the general bar on reviewing the fully and fairly litigated jurisdictional determination of a prior court, not "a freewheeling exception to full faith and credit." *Blasket*, 2024 WL 4298808, at *9. There, the petitioners were attempting to collaterally attack an adverse judgment on the grounds that the issuing court lacked jurisdiction. *Blinder*, 837 F.2d at 1103. Citing the Supreme Court's decisions in *Kalb v. Feuerstein*, 308 U.S. 433 (1940), and *United States v. U.S. Fidelity Co.*, 309 U.S. 506 (1940), the petitioners argued that "relitigation is appropriate where . . . the prior court's jurisdiction is at issue." *Id.* The D.C. Circuit disagreed. It explained that "[p]roperly read, both *Kalb* and *U.S. Fidelity* stand narrowly for the propositions that collateral attack is permitted only when the first court's proceeding substantially infringe[d] the authority of another tribunal or agency of government, or when it improperly trenched on sovereign immunity." *Id.* at 1104 (citation modified). Finding the case "unexceptional," the court declined to review the issuing court's jurisdictional determination. *Id.*

*Blinder* recognizes only that under exceptional circumstances the Court may take up a petitioner's request to reconsider the jurisdiction of a prior court. There, the D.C. Circuit was doing no more than rejecting the petitioner's argument "that relitigation is appropriate where . . . the prior court's jurisdiction is at issue." *Id.* at 1103. It had no occasion to recognize a more general exception to the full faith and credit obligation when the prior court's jurisdiction is not at issue. And if the court had taken such a step, it likely would not have described the *Kalb* and *U.S. Fidelity* exceptions as "narrow[]." Close attention to the authorities cited in *Blinder* also confirms its narrow scope. In both *Kalb* and *U.S. Fidelity*, the challenging parties collaterally attacked state court judgments on the grounds that the issuing court lacked subject matter jurisdiction. *See Kalb*, 308 U.S. at 438–40; *U.S. Fidelity*, 309 U.S. at 512. Since then, the Supreme Court has described both *Kalb* and *U.S. Fidelity* as "exceptions" to "the general rule of finality of jurisdictional determinations." *Durfee v. Duke*, 375 U.S. 106, 114 (1963). *Blinder* takes its specific formulation of the "substantial infringement" exception from a section of the Second Restatement of Judgments pertaining exclusively to circumstances that might overcome the bar on relitigating a prior court's subject matter jurisdiction. *See* Restatement (Second) of Judgments § 12(2) (1982) ("Contesting Subject Matter Jurisdiction").

Here, however, Spain does not ask the Court to reconsider the jurisdiction of the tribunal. To the contrary, Spain expressly disclaims that it is seeking to "relitigate the arbitral tribunal's jurisdiction." Dkt. 25 at 11. According to Spain, its argument does not challenge the tribunal's jurisdiction but, rather, posits (1) that the award that Eurus sought and received "constitutes unlawful state aid" under EU law, *id.* at 9, and (2) that this non-jurisdictional challenge is no different from the types of "defenses that are available against enforcement of a state court judgment in federal court," *id.* at 13; *see* Dkt. 16-1 at 29. But *Blinder* does not leave the door

open for collateral attacks on a state-court judgment where the challenging party concedes that the issuing court had jurisdiction or, at least, declines to relitigate that issue—and that is particularly true where, as here, the challenging party had a full and fair opportunity to litigate the defense at issue before the tribunal. *See* Dkt. 16-6 at 1165–67. Because a state court judgment would not be subject to collateral attack on Spain's proffered grounds, the Court need not consider whether the *Blinder* exception is available on these facts, nor the merits of Spain's argument that the tribunal substantially infringed the authority of the EU.

Because Spain has expressly disavowed any intent to contest the jurisdiction of the tribunal and collaterally to attack the ICSID award on that ground, the Court need not consider whether it would satisfy the *Blinder* exception to the general bar on relitigating jurisdictional determinations. But for the sake of thoroughness, the Court notes that in other parallel proceedings to enforce ICSID awards, Spain has invoked the "substantial infringement" exception to challenge the ICSID tribunal's jurisdiction and has been uniformly rebuffed. *See* *Blasket Renewable Invs. v. Kingdom of Spain*, No. 1:19-CV-3783, 2025 WL 2320368, at *4 (D.D.C. Aug. 12, 2025); *Blasket*, 2024 WL 4298808, at *9–10. As those courts have explained, *Kalb* "concerned a specific circumstance not present here: one in which Congress, pursuant to its plenary authority over bankruptcy, crafted legislation that expressly deprived state courts of jurisdiction over property subject to ongoing bankruptcy proceedings." *Blasket*, 2025 WL 2320368, at *4. The Supreme Court has described *Kalb* as a case in which the "overriding consideration[]" of federal preemption was "controlling." *Durfee*, 375 U.S. at 114. Following the Supreme Court's lead, lower courts have generally declined to extend the *Blinder* exception to cases that do not implicate federal preemption, *see Blasket*, 2024 WL 4298808, at *10 (collecting cases). Because this case does not involve federal preemption or "any similar

principle under which EU law might preemption the ICSID convention," *Blasket*, 2025 WL 2320368, at *9, and because the tribunal's jurisdiction is not at issue and, in any event, has already been fully and fairly litigated, the Court declines to take up Spain's invitation to carve out a new exception to the full faith and credit obligation. As the D.C. Circuit has stressed, "[p]reventing relitigation of issues already decided is the keystone of the full faith and credit obligation." *Valores*, 87 F.4th at 521.

2. *Comity and Foreign Sovereign Compulsion Doctrine*

Spain also argues that considerations of international comity and the related foreign sovereign compulsion doctrine weigh against enforcement of the award. Dkt. 16-1 at 25. International comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Usoyan v. Republic of Turkey*, 6 F.4th 31, 48 (D.C. Cir. 2021) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984). The application of comity principles "varies according to the factual circumstances surrounding each claim for its recognition." *Laker Airways*, 731 F.2d at 937; *see Usoyan*, 6 F.4th at 48 (identifying "three faces" of the comity doctrine "in U.S. law"). Spain contends that the enforcement of the ICSID award would subject Spain to obligations with which it could not comply without violating EU law on state aid. Dkt. 16-1 at 26–28. Because Spain asks the Court to defer to EU regulatory law, its comity argument implicates the prescriptive component of comity to which the foreign sovereign compulsion doctrine is closely related.

Prescriptive comity refers to "the respect sovereign nations afford each other by limiting the reach of their laws" over extraterritorial conduct. *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) (quoting *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting)) (addressing the extraterritorial reach of the Sherman

Act); *see Usoyan*, 6 F.4th at 48 (defining prescriptive comity as "deference to foreign lawmakers"); *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014). In practice, it functions as a "canon of construction." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 100 (2d Cir. 2019). Where U.S. regulatory law and foreign regulatory law impose conflicting obligations, the "principles of prescriptive comity" may counsel in favor of construing an ambiguous statute "to avoid unreasonable interference with the sovereign authority of other nations." *Empagran S.A.*, 417 F.3d at 1271; *see In re Picard*, 917 F.3d at 100 ("[P]rescriptive comity . . . asks a question of statutory interpretation: should a court presume that Congress, out of respect for foreign sovereigns, limited the application of domestic law on a given set of facts?") (citation modified).

The foreign sovereign compulsion doctrine is closely related to, albeit distinct from, prescriptive comity. *See In Re: Vitamin C Antitrust Litig.*, 8 F.4th 136, 145–46 (2d Cir. 2021); Restatement (Fourth) of Foreign Relations Law § 442 (2018) ("[T]he defense reflects the practice of states in the interests of comity."). Principally applied in antitrust cases, the doctrine "shields from . . . liability the acts of parties carried out in obedience to the mandate of a foreign government." *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979). Courts have, however, "applied the same comity-based principles in other situations more closely analogous to those here, where a Court compels compliance with U.S. law in a manner that may put a litigant at odds with its obligations under foreign law." *Blasket*, 2024 WL 4298808, at *13 (collecting cases in which U.S. courts consider "whether to enforce a subpoena when the law of a foreign state prohibits producing the relevant materials"). Although the D.C. Circuit has not adopted the doctrine, it has observed in dicta that "it causes us considerable discomfort to think that a court of law should order a violation of law, particularly on the

territory of the sovereign whose law is in question." *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987).

Neither prescriptive comity nor the foreign sovereign compulsion doctrine is available to Spain to avoid enforcement of the ICSID award. Both doctrines are defenses to liability under U.S. law that seek to alleviate conflicts between the regulatory law of the United States and of other sovereigns. Here, however, Petitioner simply asks the Court to enforce a foreign judgment, not to apply U.S. regulatory law to extraterritorial conduct or to compel compliance with U.S. law. To determine the enforceability of the ICSID award, the Court need not consider the "extraterritorial reach of federal statutes," *Mujica*, 771 F.3d at 598, or ask whether EU law compelled Spain to violate U.S. law, *cf. Mannington Mills*, 595 F.2d at 1293 (determining whether the foreign government's order "compelled the American business to violate American antitrust law"). There is, in other words, no conflict between U.S. regulatory law and EU regulatory law that the application of prescriptive comity or the foreign sovereign compulsion doctrine could avoid. *See In re Sealed Case*, 932 F.3d 915, 931 (D.C. Cir. 2019); *In re Picard*, 917 F.3d at 103; Restatement (Fourth) of Foreign Relations Law § 442 (2018) ("The defense of foreign-state compulsion arises only if two or more states have overlapping legitimate claims of *prescriptive* jurisdiction over persons, property, or conduct." (emphasis added)). Finally, enforcing the award would not require Spain to take any action that it is not already required to take under the terms of the ICSID Convention. Indeed, while invoking notions of comity, it is Spain that asks this Court to issue a decision that would conflict with international law, as embodied in the ICSID Convention and Energy Charter Treaty and as interpreted by the international tribunal with authority to resolve the parties' dispute.

Because Petitioner asks the Court to enforce a foreign judgment, this case presents a question of, if anything, adjudicatory comity, which "teaches that, when possible, the decisions of foreign tribunals should be given effect in domestic courts," *Laker Airways*, 731 F.2d at 937; *see Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895) (holding that, in general, foreign judgments should be enforced "where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction"). That is so because "recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." *Laker Airways*, 731 F.2d at 937; *cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) ("concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' [arbitration] agreement").

Moreover, "when a treaty (and, as relevant here, the domestic law implementing it) requires a court to recognize a foreign judgment, adherence to that mandate is what comity requires." *Blasket*, 2025 WL 2336428, at *8; *see Hilton v. Guyo*t, 159 U.S. 113, 162–63 (1895) (when determining "the force and effect of foreign judgments," the "most certain guide, no doubt, . . . is a treaty or a statute of this country"); *see also Laker Airways*, 731 F.2d at 937, 940. In joining the ICSID Convention and enacting Section 1650a, the political branches considered the "laws, policies and interests," *Usoyan*, 6 F.4th at 48, of the United States and the other treaty signatories and decided that they would be served by the enforcement of ICSID awards. *See Blasket*, 2024 WL 4298808, at *13 ("comity concerns are essentially 'baked in' to the ICSID Convention and its implementing statute"). It is not this Court's role to reweigh the public policy considerations underlying the political branches' decision to afford full faith and credit to

ICSID awards. *Cf. Simon v. Republic of Hungary*, 911 F.3d 1172, 1181 (D.C. Cir. 2018) (holding that the Foreign Sovereign Immunity Act's "comprehensive set of legal standards" left "no room . . . for the extra-textual, case-by-case judicial reinstatement of immunity" based on considerations of international comity), *vacated on other grounds*, 592 U.S. 207 (2021). Indeed, as other courts have pointed out, even on Spain's theory, failing to enforce an ICSID award on policy grounds would avoid one conflict at the cost of creating another between the application of EU law and United States's obligations under the ICSID Convention. *Blasket*, 2024 WL 4298808, at *13; *see* ICSID Convention art. 54(1).

It is therefore unsurprising that the D.C. Circuit has rejected a resort to "international comity" as a defense to the enforcement of an ICSID award on similar facts. In *Micula v. Romania*, the court was unpersuaded by Romania's challenge to enforcement of an ICSID award based on a purported "incompatibility between Romania's EU obligations and the district court's confirmation of the award." 101 F.4th 47, 54 (D.C. Cir. 2024). Since the district court had jurisdiction, the D.C. Circuit held, "it was obligated by Section 1650a to enforce the [] valid ICSID award." *Id.* at 54–55. So too, here.

For the reasons already explained, the ICSID award is entitled to full faith and credit, and the Court therefore has both the jurisdiction and the obligation to enforce the ICSID award.

3. *Act of State Doctrine*

Spain's final argument, which seeks refuge in the act of state doctrine, is easily rejected. The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)). More specifically, where it applies, the act of state doctrine requires U.S. courts to treat "official action by a foreign

sovereign" within its own boundaries as a binding "rule of decision." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) (citation modified); *Ricaud v. Am. Metal Co.*, 246 U.S. 304, 310 (1918) ("Such action when shown to have been taken, becomes, as we have said, a rule of decision for the courts of this country."). The doctrine has no application, however, unless "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990). Where "the validity of no foreign sovereign act is at issue," the act of state doctrine "has no application." *Id.* at 409–10.

Because enforcing the ICSID award would not require the Court to pass on the validity of any EU law or decision, the act of state doctrine does not apply. Blasket does not "challenge[] the acts or decisions of" the EU in this court. *Micula v. Gov't of Romania*, No. 20-7116, 2022 WL 2281645, at *2 (D.C. Cir. June 24, 2022) (declining to apply the act of state doctrine to reverse decision enforcing ICSID award). It seeks only "to enforce a decision rendered by a forum for international arbitration to which [Spain] has voluntarily submitted itself." *Id.* As already explained, in deciding whether to enforce an ICSID award, the Court's "role is cabined to examining ICSID's jurisdiction over the dispute, the authenticity of the award, and whether ICSID would treat the award as binding." *Blasket*, 2024 WL 4298808, at *12 (citing *Valores*, 87 F.4th at 520). Inquiring into these prerequisites for enforcing an ICSID award does not require the Court to apply, let alone declare invalid, the European Commission's decision that "arbitral awards purporting to compensate investors for Spain's modification of its renewable energy regime constitutes unlawful state aid." Dkt. 16-1 at 30. *See Blasket*, 2024 WL 4298808, at *12; *Nextera Energy Glob. Holdings B.V. v. Kingdom of Spain*, 656 F. Supp. 3d 201, 219 (D.D.C.

2023), *overruled in part on other grounds* 112 F.4th 1088 (D.C. Cir. 2024). In other words, because the validity of the EU's state-aid law "is simply not a question to be decided in the present suit, . . . there is [] no occasion to apply the rule of decision that the act of state doctrine requires." *W.S. Kirkpatrick*, 493 U.S. at 406.

### C. Stay of Proceedings and Request for Relief

Finally, Spain argues that "[i]f the Court is not inclined to dismiss the Petition at this time, the Court should stay this action pending the outcome of ongoing proceedings before the D.C. Circuit and the Supreme Court." Dkt. 16-1 at 34. The first of those proceedings involves several consolidated appeals pending before the D.C. Circuit about "similar ICSID award[s] that [were] issued to investors as a result of Spain's modification of its renewable energy regime." *Id.* at 35. Spain also relies on its petition for a writ of certiorari in *Kingdom of Spain v. Blasket Renewable Investments LLC*, No. 24-1130, which seeks resolution of an asserted circuit split over the availability of *forum non conveniens* in proceedings to confirm international arbitral awards. *Id.* at 31. Blasket objects to Spain's request on the grounds that the Court must follow binding D.C. Circuit precedent until it is overruled. Dkt. 23 at 35. It also observes that a stay would be inconsistent with the ICSID Convention's streamlined enforcement procedures and would prejudice Petitioner by delaying enforcement of the ICSID award. *Id.* at 36–37.

"[T]he power to stay proceedings is incidental to the inherent power in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When deciding whether to stay proceedings, the Court must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 255). "[A] stay may be warranted where the resolution of other litigation will likely narrow the issues in the pending cases and assist in the

determination of the questions of law involved." *ACF Renewable Energy Ltd. v. Republic of Bulgaria*, 804 F. Supp. 3d 141, 152 (D.D.C. 2025) (citation modified).

Because Spain has not shown that staying this action would promote judicial efficiency, the Court declines the request. On June 29, 2026, the Supreme Court denied Spain's petition for certiorari in *Spain v. Blasket Investments LLC*, No. 24-1130, 2026 WL 1855038 (U.S. June 29, 2026). To the extent that Spain's request for a stay was based on the possibility that the Supreme Court might grant certiorari and overrule D.C. Circuit precedent holding that *forum non conveniens* is unavailable in proceedings to confirm international arbitration awards, that request is now moot. Nor would staying these proceedings pending the D.C. Circuit's resolution of the pending appeals about similar ISCID awards promote judicial efficiency. Although the parties have already fully briefed Spain's motion to dismiss, the D.C. Circuit only recently set a briefing schedule in the consolidated appeals. *See* Per Curiam Order, *Spain v. Blasket Investments LLC*, No. 25-7136 (D.C. Cir. July 10, 2026).

The Court is also unpersuaded that the value of any additional clarity generated by the D.C. Circuit's resolution of the pending appeals would justify further delay. For one thing, part of the purpose of full faith and credit is to provide a prompt means of enforcing a judgment entered by another tribunal after the parties' claims and defenses are fully aired and to "[p]revent[] relitigation of issues already decided." *Valores*, 87 F.4th at 519. Permitting an interminable series of delays undermines that purpose. For another, a key factor relevant to the propriety of a stay is "the likelihood that the party seeking the stay will prevail on the merits." *de Csepel v. Hungary*, No. CV 10-1261 (JDB), 2022 WL 3026998, at *2 (D.D.C. Aug. 1, 2022) (citation modified). Although the movant "need not always establish a high probability of success on the merits," it must show, at least, that "a serious legal question is presented." *Id.*

Spain has not met that burden. For the reasons explained above, binding D.C. Circuit precedent confirms that the award is entitled to full faith and credit and not susceptible to attack on grounds of international comity and related principles. In addition, numerous district courts have rejected versions of the arguments Spain raises in its motion to dismiss. In light of D.C. Circuit precedent setting out the limited role of the federal district courts in confirming ISCID awards and the array of decisions from this Court applying that precedent to enforce similar ISCID awards, the pending appeals do not present a "serious legal question" about the ISCID award at issue in this case. *Cf. ACF Renewable Energy Ltd.*, 804 F. Supp. 3d at 152 (denying request for a stay based on the possibility that the Supreme Court would reverse D.C. Circuit precedent because the court was "obligated to follow controlling circuit precedent" until it was overruled).

Beyond seeking dismissal or, in the alternative, a stay, Spain offers no response or objection to Petitioner's request that the Court enter judgment in the amount specified in the award and as further specified in the Decision on Rectification. The Court will, accordingly, grant the petition and will enter relief in favor of Blasket for the full amount specified in the arbitral award, Dkt. 1-1 at 6–63, and the Decision on Rectification, Dkt. 1-1 at 281–306.[5]

[5] Spain nowhere objects to the calculation of the total amount requested by Eurus. *See* Dkt. 1 at 9 (detailing component amounts of total award requested); Dkt. 1-4 (proposed order by Eurus detailing component amounts). Spain only objects, as discussed, to the authority of the Court to enforce the award more generally, and to the assignment of the award to Blasket.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Petitioner's motion to substitute, Dkt. 26, will **DENY** Respondent's motion to dismiss or stay this action, Dkt. 16, and will **ENTER** judgment in Petitioner's favor.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 24, 2026